UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| COLLECTIONAL PROFESSIONALS, INC., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-04078-SLD-JEH |
| | ) | |
| MCDONOUGH DISTRICT HOSPITAL, | ) | |
| | ) | |
| Defendant/Counter-Plaintiff. | ) | |

<u>ORDER</u>

Before the Court is Plaintiff/Counter-Defendant Collection Professionals, Inc.'s ("CPI")

Motion to Remand to State Court for Lack of Subject Matter Jurisdiction, ECF No. 6.  For the

reasons that follow, the motion is GRANTED.

**BACKGROUND[1]**

CPI is an Illinois corporation with its principal place of business in Illinois.  It is a

licensed debt collection agency that had been providing collection services for Defendant

McDonough District Hospital ("MDH").  MDH is a hospital district and municipal corporation

in McDonough County, Illinois.  CPI and MDH entered into an agreement formalizing their

relationship on July 1, 2007 (the "Agreement").  Initially, the Agreement had a one-year term,

but the Agreement was set to renew automatically so long as the parties agreed to its terms.

The Agreement requires CPI to comply with various laws and regulations including the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–92p, and regulations

promulgated by the Consumer Financial Protection Bureau ("CFPB").  On November 30, 2021,

Regulation F, promulgated by the CFPB, took effect.  *See* 12 C.F.R. pt. 1006.  Regulation F in

---

[1] Unless otherwise noted, the facts set forth in this section are taken from the amended complaint, ECF No. 1-2.

part intended to clarify § 1692g of the FDCPA, which requires debt collectors to convey in their initial communications with debtors the debtors' right to dispute the debt.  For example, it requires debt collectors to include specific information about a debt, *see* 12 C.F.R. § 1006.34(c)(2), information about consumer protections, *id.* § 1006.34(c)(3), and consumer-response information including prompts for consumers to dispute their debts, *id.* § 1006.34(c)(4)(i).  The required information must be "clear and conspicuous."  *Id.* § 1006.34(d)(1).  The CFPB provides a model form along with Regulation F.  *See id.* § 1006.34(d)(2).  Use of the model form is a safe harbor; if used, a debt collector complies with the information and form requirements of Regulation F.  *Id.* § 1006.34(d)(2)(i).

After the CFPB provided notice of its intent to enact Regulation F and the public comment period ended, CPI "began working with its third-party software provider and third-party letter printer to modify CPI's initial contact letter to reflect the safe harbor model in Regulation F."  *See* Am. Compl. ¶ 15, ECF No. 1-2.  However, despite its diligence, CPI was not able to ensure the changes were made before the regulation took effect on November 30, 2021.

"CPI made MDH aware of its efforts to include the model notice language."  *Id.* ¶ 17.  But on February 10, 2022, MDH's president and CEO sent a letter to CPI indicating that CPI was in breach of the Agreement since it failed to use the safe-harbor model language.  He asserted that CPI's "failure to use the safe-harbor model amounted to a violation of Regulation F and the FDCPA."  *Id.* ¶ 18.  The letter requested that CPI terminate all debt collection activities on MDH's behalf, withdraw any accounts MDH placed with it, and return patient collection records to MDH.  CPI in response "pointed out" that MDH's demands breached the Agreement as MDH is not allowed to withdraw accounts from CPI while payments are being made or in the process of being collected.  *Id.* ¶ 21.

2

Both parties obtained opinion letters from attorneys. MDH's attorney opined that MDH was potentially subject to private litigation and CFPB enforcement based on CPI's collection activities undertaken pursuant to the Agreement. CPI's attorney opined that CPI was not violating Regulation F or the FDCPA and that use of the model language is not required. Despite CPI's attorney's opinion, MDH "persists in its position" that CPI is violating the law and, therefore, the Agreement. *Id.* ¶ 24.

CPI filed suit in the Circuit Court of the Ninth Judicial Circuit in McDonough County seeking a declaratory judgment that its initial contact letter complies with the FDCPA.[2] MDH removed the case to this Court, asserting that it is removable under the Court's federal question jurisdiction[3] because CPI seeks a declaratory judgment that it is not violating the FDCPA. Not. Removal ¶ 3, ECF No. 1. CPI moves to remand, arguing that there is no federal question jurisdiction because "the underlying purpose in determining whether [its] initial disclosure letters are in compliance with the FDCPA is to establish the respective rights of the parties under Section 5 of the Agreement." Mot. Remand 2.

## DISCUSSION

### I. Legal Standard

With some exceptions, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104

---

[2] The complaint also asserts another claim for a declaratory judgment and a breach of contract claim. *See* Am. Compl. ¶¶ 34–63.

[3] As the parties are both citizens of Illinois, *see* Am Compl. ¶¶ 1, 3, there is no diversity jurisdiction over the case.

(1998). "[A]nd federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009) (citation omitted).

District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Per the "well-pleaded complaint" rule, "a defendant cannot remove a case to federal court [pursuant to § 1331] unless the plaintiff's complaint demonstrates that the plaintiff's case arises under federal law." *Studer v. Katherine Shaw Bethea Hosp.*, 867 F.3d 721, 723 (7th Cir. 2017) (quotation marks omitted). In declaratory judgment actions, "the well-pleaded complaint rule dictates that jurisdiction is determined by whether federal question jurisdiction would exist over the presumed suit by the declaratory judgment defendant." *GNB Battery Techs., Inc. v. Gould, Inc.*, 65 F.3d 615, 619 (7th Cir. 1995).

"[A] case generally 'arises under' the law that creates the . . . cause of action." *Sarauer v. Int'l Assoc. of Machinists & Aerospace Workers, Dist. No. 10*, 966 F.3d 661, 669 (7th Cir. 2020) (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 8–9 (1983)). Thus, "a state law claim ordinarily cannot be removed." *Id.* However, there is a "'special and small category' of cases allowing jurisdiction where the . . . claim arises under state law but depends upon an embedded question of federal law." *Id.* at 673 (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). "A . . . complaint is said to present an 'embedded' federal issue supporting federal-question jurisdiction if it raises a federal issue that is '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Id.* (second quotation

from *Gunn*, 568 U.S. at 258); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005) (establishing this four-part test).

## II.    Analysis

CPI moves to remand, arguing that the Court does not have federal question jurisdiction over the breach of contract claim. *See* Mot. Remand 1–3.[4]  In response, MDH argues that this case arises under federal law because the presumed state law breach of contract claim depends on an issue of federal law—namely, whether the initial contact letter complies with the FDCPA. *See, e.g.*, Resp. 7–8, ECF No. 8.

The Court finds that MDH has not met its burden to show that there is an embedded federal question warranting the exercise of federal question jurisdiction.  The federal issue does appear to be necessarily raised because CPI's alleged failure to comply with the FDCPA and Regulation F is the basis for the alleged contractual violation. *See* Am. Compl. ¶¶ 26–30.  To resolve this specific claim, the Court would have to determine if CPI's letter violates federal law.[5]  And it appears that the issue is actually disputed, as CPI alleges that its initial contact letter

---

[4] Most of CPI's specific arguments are misplaced.  For instance, CPI argues that there is no presumed cause of action under the FDCPA by MDH against CPI and, thus, no federal question jurisdiction. *See* Mot. Remand 2.  But it is clear that the presumed suit by MDH against CPI would not be an FDCPA claim; rather, it would be a state law contract claim that embeds a FDCPA issue. *Cf.* Resp. 5–6, ECF No. 8 (arguing that "federal courts have often found federal-question jurisdiction over federal issues embedded in a contract, where the state-law claim turns on a question of federal law").  Additionally, CPI cites only to cases that arose before the four-part test identified above was established in *Grable & Sons*. *See* Mot. Remand 1–3.  Indeed, it fails to cite to the four-part test or argue how it should be applied. *See id.*  In an improperly filed reply brief, *see* ECF No. 9, CPI attempted to address the test, but the reply brief was stricken because it was improperly filed without leave of Court, *see* June 3, 2022 Text Order.  CPI did not subsequently seek leave to file a reply brief.  Because the Court must assure itself that it has subject matter jurisdiction, however, it will still conduct the correct analysis rather than considering the issue waived.
[5] In the larger context of the case and the dispute between the parties, the Court doubts whether this issue is necessarily raised (or even genuinely disputed for Article III standing purposes).  In its amended answer and counterclaim, MDH asserts that it had a right to terminate the Agreement for any reason. *See* Am. Answer & Countercl. ¶ 26, ECF No. 5.  If the Court were to find that MDH had the ability to terminate the Agreement regardless of whether CPI breached it, it is unclear whether a ruling on the breach of contract claim would be appropriate or necessary.

complies with the FDCPA and Regulation F, *id.* ¶ 28, and that MDH believes that CPI was violating Regulation F, *id.* ¶¶ 26–27.

But the Court finds that the issue is not substantial. The relevant inquiry is whether the issue is "significant to the federal system as a whole." *Gunn*, 568 U.S. at 264. "An issue is substantial if, for example, the issue is important to federal policy," *Ill. ex rel. Elder v. JPMorgan Chase Bank, N.A.*, 552 F. Supp. 3d 812, 818 (N.D. Ill. 2021) (citing *Sarauer*, 966 F.3d at 674), "or if '[i]n the aggregate,' cases involving the issue could affect the success of a federal policy," *id.* (alteration in original) (quoting *Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 468 (7th Cir. 2015)). Courts are more likely to find an issue substantial if it is "a nearly pure issue of law" that would affect other cases and if resolution of the issue is dispositive of the case. *See Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (quotation marks omitted); *Bennett v. Sw. Airlines Co.*, 484 F.3d 907, 910 (7th Cir. 2007) (finding no federal question jurisdiction where the case involved "a fact-specific application of rules . . . rather than a context-free inquiry into the meaning of a federal law").

MDH argues that the issue in this case is substantial because "[t]he federal policy at stake . . . is the prevention of abusive debt-collection practices," Resp. 10–11, which Congress has regulated because "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy," *id.* at 11 (quoting 15 U.S.C. § 1692(a)). In enacting Regulation F, MDH points out, *see id.* at 11–13, the CFPB was attempting to bring uniformity to application of the FDCPA, "answer certain interpretive questions" that had arisen since the FDCPA's passage, clarify how debt collectors could comply with the law using new communication technologies in particular, and "address other communications-related practices that currently pose a risk of harm to consumers, legal

6

uncertainty to industry, or both."  Debt Collection Practices (Regulation F), 85 Fed. Reg. 76,734, 76,882 (Nov. 30, 2020).

Though certainly a policy against abusive debt collection is important, the Court finds that the issue raised in this case is not substantial in the relevant sense.  This case does not involve a nearly pure question of law; instead, it involves application of Regulation F to the facts of the case.  CPI seeks a declaration that its initial contact letter complies with Regulation F, which would require the Court to review the letter and determine whether the letter provides, in a "clear and conspicuous" manner, 12 C.F.R. § 1006.34(d)(1), the required information about the debt, *id.* § 1006.34(c)(2); the required information about consumer protections, *id.* § 1006.34(c)(3); and the required consumer-response information, *id.* § 1006.34(c)(4).

And it is not clear that this case involves any genuinely disputed interpretation of federal law.  *See Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1300 (11th Cir. 2008) (finding that though the case involved an important federal issue (federal gun law), it was not substantial in the relevant sense where the court was "not persuaded that the meaning of the relevant federal law [wa]s unclear").  While the amended complaint hints at a dispute over whether Regulation F *requires* use of the model form, *see* Am. Compl. ¶ 27, it clearly does not.  The phrase "safe harbor" indicates that use of the form is sufficient but not necessary for compliance.  *See* 12 C.F.R. § 1006.34(d)(2).  A debt collector may comply by using a different form so long as the required information is provided in a clear and conspicuous manner.  *Id.* § 1006.34(d)(1).  The real question in this case, then, is whether the initial contact letter did so.  That will merely involve application of the relevant regulation to the facts of this case.  And "the influence of federal law on the outcome of a contract . . . suit is not enough to support . . arising-under jurisdiction."  *Bennett*, 484 F.3d at 910.

In sum, while resolution of this dispute is important to these parties, it would not be important to the federal system as a whole. Having found that the federal issue in the claim is not substantial enough to warrant exercise of federal jurisdiction over a state law claim, the Court finds that it has no subject matter jurisdiction over this case, and it need not address the remaining factor in the four-part test.

<b>CONCLUSION</b>

Accordingly, Plaintiff/Counter-Defendant Collection Professionals, Inc.'s Motion to Remand to State Court for Lack of Subject Matter Jurisdiction, ECF No. 6, is GRANTED. This case is REMANDED to the Circuit Court of the Ninth Judicial Circuit in McDonough County. The Clerk is directed to close the case.

Entered this 13th day of October, 2022.

s/ Sara Darrow<br>
_____<br>
SARA DARROW<br>
CHIEF UNITED STATES DISTRICT JUDGE